1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  LEE MICHAEL STABEN,              )   Case No. 06cv1407-IEG (BLM)
                                     )
12              Petitioner,          )   **REPORT AND RECOMMENDATION FOR**
    v.                               )   **ORDER DENYING PETITION FOR WRIT**
13                                   )   **OF HABEAS CORPUS**
    ROBERT J. HERNANDEZ, Warden,     )
14                                   )
                Respondent.          )
15                                   )
    _____)
16

17      This Report and Recommendation is submitted to Chief United States

18  District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b) and Local

19  Civil Rules 72.1(d) and HC.2 of the United States District Court for the

20  Southern District of California.

21      On April 6, 2004, Petitioner Lee Michael Staben, a state prisoner

22  proceeding *pro se*, filed in the Central District of California a

23  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc.

24  No. 1;[1] Central District of California ("CDCA") Doc. No. 1.  In his

25  petition, Staben challenges then-Governor Gray Davis' 2003 decision

26  denying him parole.  Id.  Respondent filed a Return on August 4, 2004,

27  _____

28      [1]  Unless otherwise noted, all docket citations are to the Southern District of
    California docket.

and Petitioner filed a Traverse on August 11, 2004.  CDCA Doc. Nos. 13-16.

On May 30, 2006, Judge John F. Walter transferred this case to the Southern District of California.  CDCA Doc. No. 20.  On July 24, 2006, the instant case was opened in this District.  Doc. No. 1.  On August 11, 2006, attorney Marc Elliot Grossman substituted as counsel for Petitioner.  Doc. No. 5.  Pursuant to this Court's order, between August and November 2006, Petitioner and Respondent filed supplemental briefs updating the issues and arguments presented in this case.  Doc. Nos. 6-7, 10, 12 and 14.

This Court has considered all of the documents filed in this case including the Petition for Writ of Habeas Corpus ("Petition"), the Return, Respondent's Memorandum of Points and Authorities ("Resp't. Mem."), the Traverse, Petitioner's Amended Supplemental Brief ("Pet. Amend. Supp. Brief"), Respondent's Supplemental Response ("Resp't. Supp. Resp."), Petitioner's Response ("Pet. Resp."), and Petitioner's Errata ("Pet. Errata").  For the reasons set forth below, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Petitioner was convicted of two counts of second degree murder for killing Danwya Boyd and her eight month old fetus.  Abstract of Judgment, Exh. B.[2]  The jury found true the special allegation that

_____

[2] Petitioner and Respondent both submitted numerous exhibits in support of their pleadings.  Many of the exhibits are identical.  For ease in citation, this Court will cite to Respondent's exhibits unless the relevant exhibit is attached only to Petitioner's pleadings.  Accordingly, unless otherwise identified, all exhibit citations reference the exhibits submitted by Respondent.  In addition, many of the exhibits contain numerous identifying numbers.  Again, for ease in citation and unless otherwise noted, this Court will use the consecutive numbering located on the bottom,

Petitioner personally used a firearm.  Id.  Petitioner was sentenced to eighteen years-to-life on each count to run concurrently.  Sentencing Transcript, Exh. C.  On direct appeal, the court of appeal stayed the special allegation as to Count 2 so Petitioner's final sentence was eighteen years-to-life on Count 1 and fifteen years-to-life on Count 2, to run concurrently.  Exh. B; Court of Appeal Decision, Exh. E.

On December 27, 2001, the Board of Prison Terms[3] ("Board") held Petitioner's first parole hearing and found him unsuitable for parole. December 27, 2001 Board Hearing Transcript, Exh. F at 102-05.  In reaching this determination, the Board stated that the "essential reason [for the denial] was the time and gravity of the commitment offenses themselves in which multiple victims were killed."  Id. at 102.

On December 20, 2002, the Board conducted a second parole hearing and found Petitioner suitable for parole.  December 20, 2002 Board Hearing Transcript, Exh. G at 149-68.  In reaching its decision, the Board stated that "[t]his is a very unusual decision ... but, frankly, we believe it is in the interests of justice."  Id. at 149.  In support of its decision, the Board cited Petitioner's complete lack of criminal history, his stable social history, the fact that he graduated from high school and continued his education while in prison, his involvement in religious and self-help activities while in prison, his lack of infractions while in prison, his realistic parole plans, his great family support, and his considerable remorse.  Id. at 149-51.  The Board

right-hand side of each page.

[3]  In his Petition, Petitioner discusses the decision by the Board of Prison Terms.  The Board of Prison Terms, along with the Youth Authority Board and the Narcotic Addict Evaluation Authority, is now part of the Board of Parole Hearings. California   Department   of   Corrections   and   Rehabilitation, http://www.cdcr.ca.gov/DivisionsBoards/BOPH/index.html (last visited Apr. 3, 2007).

1    also considered the prosecuting attorney's letters, defense counsel's

2    letter advocating for parole, and Petitioner's positive psychological

3    reports. Id. at 151-56.

4        On May 19, 2003, Governor Davis reversed the parole grant.

5    Governor's Reversal Decision, Exh. H.   In the written statement, the

6    Governor explained his reasons:

7        Mr. Staben has no prior criminal history. Since the shooting,
         he has expressed remorse and accepted responsibility.
8        Moreover, while in prison, Mr. Staben has earned his
         vocational welding and state welding certification and has
9        established viable parole plans.   These are all positive
         factors that would support a finding of suitability for
10       parole.  However, I believe they are outweighed by negative
         factors demonstrating that Mr. Staben is unsuitable for parole
11       at this time.

12       I believe the Board of Prison Terms gave inadequate
         consideration to the gravity of the crime.  The facts of this
13       case show extreme indifference to the value of human life and
         disregard for human suffering.  Mr. Staben armed himself with
14       a shotgun, grabbed shotgun shells, loaded the gun en route and
         he fired into an occupied home at night.   Indeed, the
15       likelihood that someone was inside the trailer was
         substantial, given it was nighttime.  As such, I believe that
16       the gravity of this offense alone is an individual negative
         factor, such that consideration of the public safety requires
17       a more lengthy period of incarceration.

18       Mr. Staben had several clear opportunities to cease, but
         instead chose to continue, which is another negative factor I
19       find individually weighs against parole.  He testified that he
         sat in the truck and drove around the neighborhood on more
20       than one instance before returning, approaching the trailer
         and firing.  At any one of those points, Mr. Staben could have
21       returned home.  He made the choice to fire into a home.

22       In finding Mr. Staben suitable for parole, the hearing panel
         determined that he committed the crime as a result of
23       significant stress.  I disagree.  Mr. Goodhue did not pose an
         immediate threat to Mr. Staben or his family.  Yet Mr. Staben
24       went to confront Mr. Goodhue, armed.  Rather than call police
         to investigate the burglary, he decided to engage in vigilante
25       justice.  The theft of his television and his residual anger
         from the previous altercation are trivial in comparison with
26       the loss of two lives which resulted from his attempt at
         vengeance.

27
         I have taken into consideration the concerns expressed by Mr.
28       Staben's attorney and the prosecuting attorney.  However,
         although Mr. Staben could have been charged with a variety of

                                    4                        06cv1407-IEG (BLM)

lesser offenses then [sic] murder, the Court of Appeal found that second degree murder was the most appropriate instruction based on the facts.  Furthermore, I believe that Mr. Staben's conduct demonstrates that he acted with conscious disregard for life, supporting a finding of implied malice and as such was convicted and sentenced appropriately.

In finding Mr. Staben suitable for parole, the Board of Prison Terms found he had enhanced his ability to function within the law based on his involvement in self-help programming.  I disagree.  Mr. Staben has only participated in approximately 14 Alcoholics Anonymous meetings during his 12 years in prison.  His other program participation amounts to a three and one-half day religious meeting, 120 hours of substance abuse counseling, and 22 hours with the Hands of Peace organization. Mr. Staben lacks sufficient self-help and anger management therapy.  In light of the fact that Mr. Staben has not participated in any direct anger management therapy, I am concerned about his potential for violence in an unstructured community setting.  Therefore I disagree with the Board of Prison Term's finding that Mr. Staben suitable for parole [sic].

Id. at 172-73.

On August 29, 2003, Petitioner filed a petition for writ of habeas corpus in state court challenging Governor Davis' decision.  Exh. L.  On September 29, 2003, the superior court denied the petition by checking a box stating that "[p]etition is without merit."  Exh. M.

On October 16, 2003, Petitioner filed essentially the same petition in the court of appeal, which was summarily denied on December 17, 2003. Exhs. N and O.  On December 24, 2003, Petitioner filed a habeas petition in the California Supreme Court, asserting essentially the same argument.  Exh. P.  The California Supreme Court summarily denied the petition on February 18, 2004.  Exh. Q.

**STANDARD OF REVIEW**

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of

> a State court only on the ground that he is in
> custody in violation of the Constitution or laws or
> treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus
> on behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the
> merits in State court proceedings unless the
> adjudication of the claim—
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,
> clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  Summary denials do constitute adjudications on the merits.  Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).  Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."  Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the

6

1   correct governing legal principle from this Court's decisions but
2   unreasonably applies that principle to the facts of the prisoner's
3   case." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). "[A] federal
4   habeas court may not issue the writ simply because the court concludes
5   in its independent judgment that the relevant state-court decision
6   applied clearly established federal law erroneously or incorrectly. . .
7   . Rather, that application must be *objectively unreasonable*." Id.
8   (emphasis added)(internal quotation marks and citations omitted).
9   Clearly established federal law "refers to the holdings, as opposed to
10  the dicta, of [the United States Supreme] Court's decisions." Williams,
11  529 U.S. at 412.

12      Finally, habeas relief is also available if the state court's
13  adjudication of a claim "resulted in a decision that was based on an
14  unreasonable determination of the facts in light of the evidence
15  presented in state court." 28 U.S.C. § 2254(d)(2). A state court's
16  decision will not be overturned on factual grounds unless this Court
17  finds that the state court's factual determinations were objectively
18  unreasonable in light of the evidence presented in the state court
19  proceeding. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). This
20  Court will presume that the state court's factual findings are correct,
21  and Petitioner may overcome that presumption only by clear and
22  convincing evidence. 28 U.S.C. § 2254(e)(1).

23                              **DISCUSSION**

24      Petitioner states nine claims for relief in his federal habeas
25  petition. Doc. No. 1. However, several of the claims assert the same
26  argument so this Court will group them together. In summary, Petitioner
27  asserts that he has a liberty interest in parole and that Governor
28  Davis' decision reversing the Board's parole recommendation violated his

due process rights. Id. at 11-34. Specifically, Petitioner alleges that his constitutional rights were violated because the Governor did not *personally* review the record, the Governor improperly relied on unchanging factors (that is, the characteristics of the commitment offenses), and there was insufficient evidence supporting the Governor's decision. Id. at 11-32. Petitioner also alleges that the reviewing court should use the "clear and convincing evidence" standard of review rather than the "some evidence" standard in evaluating the Governor's reversal of the Board's parole grant. Id. at 30-32. Finally, Petitioner asserts that the Governor had a "no-parole" policy which violates the Due Process and Ex Post Facto Clauses of the United States Constitution. Id. at 32-34.

Respondent denies Petitioner's claims and initially argues that Petitioner's claims are not exhausted. Resp't. Mem. at 4-5. Respondent also argues that Petitioner does not have a liberty interest in parole release. Id. at 8-11. Respondent continues that even if Petitioner does have such a liberty interest, he received all of the required due process, and further, that there is sufficient evidence supporting the Governor's decision. Id. at 11-18. Finally, Respondent argues that the Petition should be denied because Petitioner has failed to demonstrate that any state court's decision rejecting his claims was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts presented. Id.

A. **Exhaustion**

Respondent argues that Petitioner's due process claims are not exhausted because in his state court pleadings, Petitioner "relied primarily on California law and failed to cite the United State's [sic]

8

1  Constitution as the basis for [his] due process claims." Resp't. Mem.

2  at 5; Resp't. Supp. Resp. at 4-5.  Petitioner counters that the due

3  process claims were exhausted because his arguments in the state courts

4  included several citations to federal and state court cases that relied

5  on federal constitutional analysis and contained repeated references to

6  the Due Process Clause.  Traverse at 2-3.

7        "An application for a writ of habeas corpus on behalf of a person

8  in custody pursuant to the judgment of a State court shall not be

9  granted unless it appears that the applicant has exhausted the remedies

10 available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To

11 satisfy this requirement, a petitioner must have "fairly presented" the

12 "substance" of his federal habeas claim to the state's highest court.

13 Anderson v. Harless, 459 U.S. 4, 6 (1982); see also O'Sullivan v.

14 Boerckel, 526 U.S. 838, 847-48 (1999) (explaining that petitioners must

15 present their habeas claims to the state's highest court, even if that

16 court's review is discretionary).

17       In addition, a federal habeas petitioner must provide the state's

18 highest court with "a 'fair opportunity' to apply controlling legal

19 principles to the facts bearing upon his constitutional claim."

20 Anderson, 459 U.S. at 6.  "[I]t is not enough that all the facts

21 necessary to support the federal claim were before the state courts, or

22 that a somewhat similar state-law claim was made." Id. (internal

23 citation omitted).  Instead, "a claim for relief in habeas corpus must

24 include reference to a specific federal constitutional guarantee, as

25 well as a statement of the facts that entitle the petitioner to relief."

26 Gray v. Netherland, 518 U.S. 152, 162-63 (1996).  A "naked reference to

27 'due process'" in a state court petition is insufficient.  Shumway v.

28 Payne, 223 F.3d 982, 987 (9th Cir. 2000).  Neither is the exhaustion

1   requirement satisfied by the mere fact that the "due process
2   ramifications" of an argument might be "self-evident." <u>Anderson</u>, 459
3   U.S. at 7.

4        A review of Petitioner's state court habeas pleadings reveals that
5   Petitioner did not clearly state that his arguments were premised on the
6   United States Constitution or the federal Due Process Clause.  <u>See</u>
7   Resp't. Exhs. L, N, and P.  However, Petitioner did cite several federal
8   cases and repeatedly asserted that the Governor's decision violated his
9   due process rights.  <u>Id.</u> (citing <u>Biggs v. Terhune</u>, 334 F.3d 910 (9th
10  Cir. 2003); <u>McQuillion v. Duncan</u>, 306 F.3d 895 (9th Cir. 2002)).
11  Construing Petitioner's *pro se* pleadings liberally as required by <u>Haines</u>
12  <u>v. Kerner</u>, 404 U.S. 519, 520 (1972), this Court finds that Petitioner
13  presented the substance of his due process claims to the California
14  Supreme Court and alerted that court to the federal nature of his
15  claims.  Accordingly, this Court finds that Petitioner's due process
16  claims are exhausted and **RECOMMENDS** that Respondent's request to deny
17  the Petition on this basis be **DENIED**.

18       Respondent also alleges Petitioner's argument that Governor Davis
19  had a "policy of denying parole which violates the prohibition against
20  'ex post facto' laws" was not presented to the state courts.  Resp't.
21  Mem. at 5.  In his Traverse, Petitioner conceded that he had not
22  presented this argument to the state court and voluntarily abandoned
23  this claim.  Traverse at 3.  Petitioner confirmed the abandonment of
24  this claim in his supplemental filings in this Court.  Pet. Resp. at 1-
25  2.  Accordingly, to the extent it is based on the Ex Post Facto Clause,
26  this Court **RECOMMENDS** that Claim 9 of the Petition be **DENIED** on the
27  grounds that it was not exhausted and Petitioner abandoned it.
28  ///

B.   **Due Process Claims**

In several different claims, Petitioner argues that his constitutional due process rights were violated because the Governor did not *personally* review the Board's decision (Claim 1), there was insufficient evidence supporting the Governor's decision (Claims 1-3, 6, and 8), and the Governor improperly relied on the commitment offense conduct (Claims 4-5).   Respondent submits that the state court's decisions rejecting Petitioner's arguments are decisions on the merits and are neither contrary to nor an unreasonable application of clearly established federal law.

The Due Process Clause prohibits the government from depriving an inmate of a liberty interest without adequate procedural safeguards. See U.S. Const. amends. V, XIV.   Therefore, in analyzing whether an inmate's due process rights were violated, courts must look at two distinct elements: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citation omitted); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006); Biggs, 334 F.3d at 913.

1.   **Liberty Interest**

Respondent argues that the Petition should be denied in its entirety because Petitioner does not have a liberty interest in parole. Resp't. Mem. at 8-11; Resp't. Supp. Resp. at 7-8.   In his supplemental pleading, Respondent acknowledges that the Ninth Circuit has held that California prisoners do have a liberty interest in parole but argues that the decision was decided incorrectly.   Resp't. Supp. Resp. at 7 n.

1  3.

2      The United States Supreme Court established in <u>Greenholtz v.</u>

3  <u>Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1 (1979), and

4  <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987), that

5        while there is no constitutional or inherent right of a
   convicted person to be conditionally released before the
6        expiration of a valid sentence, a state's statutory scheme, if
   it uses mandatory language, creates a presumption that parole
7        release will be granted when or unless certain designated
   findings are made, and thereby gives rise to a constitutional
8        liberty interest.

9  <u>Biggs</u>, 334 F.3d at 914 (quoting <u>McQuillion</u>, 306 F.3d 895 at 901).  The

10  Ninth Circuit subsequently determined that California's statutory parole

11  scheme uses the mandatory language contemplated by <u>Greenholtz</u> and <u>Allen</u>

12  and thereby "creates in every inmate a cognizable liberty interest in

13  parole which is protected by the procedural safeguards of the Due

14  Process Clause."  <u>Biggs</u>, 334 F.3d at 914; <u>McQuillion</u>, 306 F.3d at 903.

15      Respondent contends that, to the extent that clearly established

16  federal law may once have held that California prisoners possess a

17  liberty interest in parole release, two recent cases, <u>Sandin v. Connor</u>,

18  515 U.S. 472 (1995), and <u>In re Dannenberg</u>, 34 Cal. 4th 1061 (Cal. 2005),

19  have called that conclusion into doubt.  Resp't. Mem. at 8-11; Resp't.

20  Supp. Resp. at 7-8.  As a result, Respondent argues that the current

21  state of clearly established federal law recognizes no such liberty

22  interest for California prisoners.  <u>Id.</u>  The Ninth Circuit explicitly

23  rejected this argument, concluding that "<u>Dannenberg</u> does not explicitly

24  or implicitly hold that there is no constitutionally protected liberty

25  interest in parole."  <u>Sass</u>, 461 F.3d at 1128.  The court again held that

26  "California's parole scheme gives rise to a cognizable liberty interest

27  in release on parole . . . [and] this 'liberty interest is created, not

28  upon the grant of a parole date, but upon the incarceration of the

12

1   inmate.'" Id. at 1127.  Accordingly, this Court finds that Petitioner
2   does possess a liberty interest in parole and, therefore, **RECOMMENDS**
3   that Respondent's request to deny the Petition on this basis be **DENIED.**

4               **2.   Adequate Procedural Protections**

5       Because Petitioner has a liberty interest in parole, this Court
6   next must determine whether Petitioner received adequate procedural
7   protections for his due process rights.  The United States Supreme Court
8   has stated that due process "is flexible and calls for such procedural
9   protections as the particular situation demands." Greenholtz, 442 U.S.
10  at 12 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  A parole
11  consideration hearing "affords [Petitioner] an opportunity to be heard,
12  and when parole is denied it informs the inmate in what respects he
13  falls short of qualifying for parole; this affords the process that is
14  due under these circumstances.  The Constitution does not require more."
15  Greenholtz, 442 U.S. at 16.

16      Petitioner does not argue that he did not receive adequate
17  procedural protections.  Moreover, a review of Petitioner's 2002 parole
18  consideration hearing transcript reveals that the hearing clearly
19  satisfied and exceeded these minimal procedural due process
20  requirements.  In particular, Petitioner was present at the hearing and
21  was represented by counsel.  Exh. G.  Petitioner and his counsel were
22  given the opportunity to present arguments in favor of a finding of
23  suitability for parole.  Id. at 141-48.  Petitioner answered questions
24  about the commitment offenses, about his personal improvement during his
25  time in prison, and about his plans for his post-prison future, among
26  other things.  Id. at 113-41.  In advising Petitioner of its decision to
27  grant parole, the Board informed Petitioner of the factors on which it
28  relied and the future process that would be followed.  Id. at 149-68.

06cv1407-IEG (BLM)

Moreover, the Governor's decision reversing the parole grant was based on the same factors considered by the Board, set forth in writing, and provided specific reasons for the reversal and explanations of the ways in which the Petitioner fell short of qualifying for parole.  This Court therefore finds that Petitioner's parole consideration hearing and gubernatorial review contained adequate procedural protections under the Due Process Clause.

### 3. <u>Sufficiency of the Evidence</u>

Petitioner argues that there was insufficient evidence supporting the Governor's decision to reverse the Board's parole grant.  Initially, Petitioner argues that courts should use the clear and convincing standard in evaluating a Governor's decision to reverse a parole grant.  Petition at 30; Pet. Amend. Supp. Brief at 21-23.  Petitioner also asserts that the facts stated by the Governor in support of his decision are not supported by the record.  Petition at 13-24, 31-32; Pet. Amend. Supp. Brief at 2-20.  Finally, Petitioner argues that the Governor improperly emphasized and relied on the unchanging characteristics of Petitioner's commitment offenses.  <u>Id.</u>; Petition at 26-28; Pet. Amend. Supp. Brief at 6-21.

Respondent contends that the "some evidence" standard of review is not clearly established and that, therefore, it can not serve as the basis for habeas review.  Resp't. Supp. Resp. at 8-9.  However, if that standard is applied, Respondent contends that there was sufficient evidence in the record to support the Governor's decision.  <u>Id.</u> at 10-12.  Respondent further argues that the Governor did not err by relying on the facts of the commitment offenses.  <u>Id.</u>

### a. <u>Standard of Review</u>

In Claim Seven, Petitioner asserts that "[a] Governor's decision

reversing a Board parole grant should not be upheld unless a reviewing court finds either that the grounds it set forth were supported by clear and convincing evidence that the prisoner is not currently suitable for parole or that the Board decision being reversed was clearly erroneous." Petition at 30; Pet. Amend. Supp. Brief at 21-22.  Although Petitioner concedes that there is no Ninth Circuit or Supreme Court case dictating that clear and convincing evidence is the correct standard of review, Petitioner argues that such a decision is required when a liberty interest exists.  Id. (citing Carrillo v. Fabian, 701 N.W.2d 763 (Minn. 2005)).  In contrast, Respondent asserts that the Ninth Circuit has held that the correct standard of review in such cases is "the 'some evidence' standard set forth in Superintendent v. Hill, 472 U.S. 445 (1985)," but contends that because no Supreme Court decision has required the use of that standard of review, it cannot form the basis for habeas relief.  Resp't. Mem. at 13; Resp't. Supp. Brief at 9.

The Ninth Circuit has rejected both arguments.  See Sass, 461 F.3d at 1128-29.  The Sass court reiterated that "although Hill involved the accumulation of good time credits instead of a parole denial, the some evidence standard applies in both situations because 'both directly affect the duration of the prison term.'" Id. at 1128 (quoting Jancsek v. Or. Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)).  While Sass did not involve the Governor's reversal of a parole grant, the court reasoned that the some evidence standard applies to a parole denial because both directly affect the duration of the prison term.  Id. Because the Governor's denial of parole, via the reversal of the parole grant, also directly affects the duration of the prison term, it also is subject to review via the some evidence standard.  See Martin v. Marshall, 431 F. Supp. 2d 1038, 1044-48 (N.D. Cal. 2006) (applying the

1   some evidence standard to the Governor's decision to reverse a parole

2   grant); In re Rosenkrantz, 29 Cal. 4th 616, 667 (Cal. 2002) (holding

3   that in California, due process requires that the Governor's decision

4   reversing a parole grant must be supported by some evidence in the

5   record that was before the Board).   The Sass court also analyzed

6   Respondent's argument and concluded, "[w]e therefore reject the state's

7   contention that the some evidence standard is not clearly established in

8   the parole context."  Sass, 461 F.3d at 1129.   Accordingly, this Court

9   finds that the "some evidence" standard is the proper standard to employ

10  in evaluating the Governor's decision to reverse the Board's parole

11  recommendation and that this standard is clearly established in the

12  parole context.

13      Respondent also asserts that the state court decisions denying

14  Petitioner's state habeas petitions were reasoned decisions which are

15  entitled to deference.  Resp't. Supp. Brief at 6.   In this case, the

16  California Supreme Court and California Court of Appeal summarily denied

17  Petitioner's petitions. Exhs. O and Q.  As such, this Court must "look

18  through" these decisions to the superior court decision, see Ylst, 501

19  U.S. at 801-06, which Respondent alleges is the last reasoned decision.

20  Resp't. Supp. Brief at 6.   As noted above, the superior court judge

21  merely checked a box and inserted a brief statement that the state

22  habeas petition was without merit.  Exh. M.  This does not constitute a

23  reasoned decision.   Where the claim is exhausted but there is no

24  reasoned decision, federal habeas review is not de novo.  See Delgado v.

25  Lewis, 223 F.3d 976, 982 (9th Cir. 2000).   Rather, the court "must

26  conduct an independent review of the record to determine whether the

27  state court's decision was objectively unreasonable." Sass, 461 F.3d at

28  1127.  Accordingly, this Court will conduct an independent review of the

1  record provided to the Governor and will determine whether or not the

2  state court's conclusion that there was some evidence supporting the

3  Governor's decision was objectively unreasonable.

4         **b.   "Some Evidence"**

5         When assessing whether a state parole board's suitability

6  determination was supported by "some evidence," a federal court's

7  analysis is framed by the relevant state's statutes and regulations

8  governing parole suitability determinations.   See Biggs, 334 F.3d at

9  915.   In a California parole proceeding, "[t]he Board must determine

10 whether a prisoner is presently too dangerous to be deemed suitable for

11 parole based on the 'circumstances tending to show unsuitability' and

12 the 'circumstances tending to show suitability' set forth in Cal. Code

13 Regs., tit. 15 § 2402(c)-(d)."   Irons v. Carey, 479 F.3d 658, 662-63

14 (9th Cir. 2007).   The delineated circumstances tending to show

15 unsuitability for parole include the commitment offense, previous record

16 of violence, unstable social history, psychological factors, and

17 institutional behavior.   See Cal. Code Regs. tit. 15, § 2402(c).

18 Circumstances tending to indicate suitability for parole include no

19 juvenile record, stable social history, signs of remorse, motivation for

20 crime, lack of criminal history, age, understanding and plans for

21 future, and institutional behavior.   See id. at § 2402(d).   The listed

22 circumstances are merely guidelines; "the importance attached to any

23 circumstance or combination of circumstances in a particular case is

24 left to the judgment of the panel."   Id. at § 2402(c) and (d).   When

25 reviewing the Board's parole grant, the Governor is required to consider

26 those same factors.   See Cal. Const. art. V, § 8(b) ("The Governor may

27 only affirm, modify, or reverse the decision of the parole authority on

28 the basis of the same factors which the parole authority is required to

1  consider."); <u>Rosenkrantz</u>, 29 Cal. 4th at 660 ("the Governor's decision

2  must be based upon the same factors that restrict the Board in rendering

3  its parole decision").

4       In the instant case, Governor Davis considered the positive factors

5  recited by the Board but concluded that Petitioner was unsuitable for

6  parole because the negative factors outweighed the positive ones.  Exh.

7  H at 172.  The negative factors stated by the Governor are (1) the Board

8  "gave inadequate consideration to the gravity of the crime," (2)

9  Petitioner did not commit the crime as the result of significant stress,

10  and (3) Petitioner had not participated in sufficient anger management

11  and self-help courses.  <u>Id.</u> at 172-73.  Petitioner argues that there is

12  no evidence supporting any of the reasons stated by the Governor for

13  reversing Petitioner's parole grant.  Petition at 13-26; Pet. Supp.

14  Brief at 2-21.

15       "To determine whether the some evidence standard is met 'does not

16  require examination of the entire record, independent assessment of the

17  credibility of witnesses, or weighing of the evidence.  Instead, the

18  relevant question is whether there is any evidence in the record that

19  could support the conclusion reached by the disciplinary board.'" <u>Sass</u>,

20  461 F.3d at 1128 (quoting <u>Hill</u>, 472 U.S. at 455-56).  However, "the

21  evidence underlying the [B]oard's decision must have some indicia of

22  reliability." <u>Biggs</u>, 334 F.3d at 915.  This Court will consider each of

23  the factors cited by the Governor individually.

24                    **(i)   The Commitment Offenses**

25       Section 2402(c)(1) authorizes the Board and the Governor to

26  consider the commitment offense and whether it was committed in an

27  "especially heinous, atrocious or cruel manner" when evaluating a

28  prisoner's suitability for parole.  Cal. Code Regs. tit. 15, §

06cv1407-IEG (BLM)

2402(c)(1).[4]  Moreover, the Ninth Circuit recently confirmed that

> [a] prisoner's commitment offense may constitute a
> circumstance tending to show that a prisoner is presently too
> dangerous to be found suitable for parole, but the denial of
> parole may be predicated on a prisoner's commitment offense
> only where the Board can point to factors beyond the minimum
> elements of the crime for which the inmate was committed that
> demonstrate the inmate will, at the time of the suitability
> hearing, present a danger to society if released.  Factors
> beyond the minimum elements of the crime include, *inter alia*,
> that [t]he offense was carried out in a dispassionate and
> calculated manner, that [t]he offense was carried out in a
> manner which demonstrates an exceptionally callous disregard
> for human suffering, and that [t]he motive for the crime is
> inexplicable or very trivial in relation to the offense.

Irons, 479 F.3d at 658 (internal citations and quotations omitted).

In his written reversal, the Governor stated several reasons for
his conclusion: (1) "the facts of the case show extreme indifference to
the value of human life and disregard for human suffering," (2)
Petitioner "had several clear opportunities to cease, but instead chose
to [commit the crimes,]" (3) the "theft of his television and his
residual anger from the previous altercation are trivial in comparison
with the loss of two lives which resulted from his attempt at
vengeance," and (4) despite the statements by the involved attorneys,
Petitioner's "conduct demonstrates that he acted with conscious

---

[4]  The complete statute provides:

(1) Commitment Offense.  The prisoner committed the offense in an
especially heinous, atrocious or cruel manner.  The factors to be considered
include:
    (A) Multiple victims were attacked, injured or killed in the same or
separate incidents.
    (B) The offense was carried out in a dispassionate and calculated
manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the
offense.
    (D) The offense was carried out in a manner which demonstrates an
exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in
relation to the offense.

Cal. Code Regs. tit. 15, § 2402(c)(1).

1 disregard for life, supporting a finding of implied malice and as such

2 was convicted and sentenced appropriately." Exh. H.

3      Petitioner argues that the facts relied upon by the Governor are

4 inappropriate because they are the minimum facts required for the crime

5 of second degree murder and, therefore, do not establish that the crimes

6 were committed in an "especially heinous, atrocious, or cruel manner."

7 Petition at 17-19 and 24-26; Pet. Amend. Supp. Brief at 4-6. Petitioner

8 further argues that the Governor's reliance on the unchanging facts of

9 his commitment crimes also violates due process. Petition at 26-28;

10 Pet. Amend. Supp. Brief at 6-21. Respondent counters that the Governor

11 properly considered the gravity of the crime and that he did not solely

12 rely on the unchanging facts of the commitment crimes. Resp't. Supp.

13 Resp. at 10-12.

14      The facts considered by the Governor are set forth in the beginning

15 of his written decision. See Exh. H at 171-72. They include that when

16 Petitioner discovered that his television had been stolen, he

17 immediately decided that his ex-roommate, Wayne Goodhue, had taken it.

18 Id. at 171. Petitioner was very angry, and rather than calling the

19 police, Petitioner grabbed a rifle, which he previously had obtained

20 from a relative for protection, and drove to Goodhue's trailer. Id.

21 Petitioner was observed standing near and yelling at the small trailer.

22 Id. A witness believed that Petitioner received a response from someone

23 within the trailer. Id. Petitioner then returned to his truck, grabbed

24 his rifle, and fired one shot into the trailer. Id. Petitioner then

25 rushed home, quickly told his family that no one was in the trailer, and

26 hid the murder weapon. Id. at 171-72. Petitioner's shotgun blast drove

27 three pellets into Mr. Goodhue, injuring him, and thirteen pellets into

28 Ms. Boyd, killing her and her fetus. Id. at 171. Based upon these

facts, the Governor determined that the gravity of the offense dictated that public safety requires a more lengthy period of incarceration. Id. at 172-73.

This Court's independent review of the record confirms the existence of the facts relied upon by the Governor. See, e.g., Probation Report, Exh. D at 20-24; Exh. E. at 30-34; Exh. F at 56-63; Exh. G at 113 (incorporating the factual statement from the December 27, 2001 hearing into the December 20, 2002 hearing); Life Prisoner Evaluation Report, Exh. I at 177-79. While Petitioner denies knowing that individuals were present in the trailer, there is a witness statement to the contrary. See Exh. D at 21. Moreover, the facts also support a finding that, even without Petitioner's actual knowledge that the victims were home, Petitioner's conduct demonstrated an exceptionally callous disregard for human suffering that undeniably resulted in the death of two people. Based upon its independent review of the record, this Court finds that the Governor's decision on these factors had the requisite evidentiary support and that these factors were properly considered by the Governor. Cal. Code Regs. tit. 15, § 2402(c)(1)(A) and (D) (multiple victims and exceptionally callous disregard for human suffering).

The Governor also relied on the fact that "the theft of [Petitioner's] television and his residual anger from the previous altercation are trivial in comparison to the loss of two lives which resulted from his attempt at vengeance." Exh. H at 172. This factor also was properly considered by the Governor. Cal. Code Regs. tit. 15, § 2402(c)(1)(E) (the motive for the crime is inexplicable or very trivial in relation to the offense). Again, an independent review of the record reveals sufficient evidentiary support for this conclusion.

In particular, the facts of the commitment offenses support the finding that the motive for these crimes was the victim's suspected theft of Petitioner's television as part of the ongoing disagreement between Petitioner and Mr. Goodhue, and that this vengeance motive is trivial in relation to the deaths of two people.  See, e.g., Exh. D at 20-24; Exh. F at 56-64, 67 (television actually belonged to the victim); Exh. G at 113-17.

Finally, in evaluating the gravity of the commitment offenses, the Governor emphasized that Petitioner had "several clear opportunities to cease."  Exh. H at 172.  As before, a review of the record provides evidentiary support for this conclusion.  See Exh. D at 21-23; Exh. F at 57, 61-62, 65-66; Exh. G at 115-16; Exh. I at 178.  Moreover, while this factor is not explicitly set forth in section 2402, it may be considered as part of the evidence supporting the determination that the crime was committed in a manner which demonstrates exceptionally callous disregard for human suffering and/or the trivial nature of the motive.  Cal. Code Regs. tit. 15, § 2402(c)(1)(D) and (E).

This Court has conducted an independent review of the record available to the Board during the 2002 parole hearing and to the Governor as part of his 2003 review of the parole grant, and has determined that that record contains the requisite "some evidence" supporting the Governor's determination that the commitment offenses were committed in an especially heinous or atrocious or cruel manner, including that there were multiple victims and that the motive was very trivial in relation to the crime.  See Hill, 472 U.S. at 456.  As such, this Court finds that the state court's decision denying Petitioner's state habeas petition was not unreasonable.

Petitioner nevertheless contends that the Governor's exclusive

reliance on the unchanging factors of his commitment offenses constitutes a due process violation. Petition at 26-32. Pet. Amend. Supp. Brief at 6-21; Pet. Resp. at 2-7. This argument fails because no clearly established federal law prohibits the use of "unchanging factors" in parole suitability determinations.[5] See Irons, 479 F.3d at 664-65. In fact, in a series of recent cases, the Ninth Circuit has rejected habeas challenges to parole denials involving similar considerations. For example, in Biggs, the Ninth Circuit upheld the denial of a prisoner's challenge to the Board's unsuitability finding despite his exemplary prison record and strong evidence of rehabilitation, specifically recognizing that the Board's decision was properly based on the immutable factors of the gravity of the offense and the prisoner's conduct prior to imprisonment. See Biggs, 334 F.3d at 916. In so finding, however, the Biggs court cautioned that over time, should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying [that prisoner] a parole date simply because of the nature of [his] offense and prior conduct would

---

[5] "Clearly established federal law" only refers to the holdings, as opposed to dicta, of United States Supreme Court decisions. Williams, 529 U.S. at 412. Although Ninth Circuit law may be used as "persuasive authority" for certain purposes, Ninth Circuit holdings without supporting United States Supreme Court precedent are not binding on the state courts. See Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir.2000), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003) ("[W]e may not, of course, reverse a state court's decision simply because it is inconsistent with a rule established by a Ninth Circuit case.") (addition in original)); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000) ("Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'"). Therefore, a line of dicta in a Ninth Circuit case cannot constitute "clearly established federal law."

1  raise serious questions involving [the prisoner's] liberty interest in

2  parole." Id.

3      Three years later, the Ninth Circuit revisited the issue—and the

4  Biggs' court's cautionary language—in Sass.  See Sass, 461 F.3d at 1129.

5  There, the prisoner maintained that the Board's denial of parole solely

6  due to immutable behavioral evidence, namely, the gravity of the

7  commitment offenses in combination with evidence of the prisoner's pre-

8  conviction recidivism, violated due process.  Id.  Although reiterating

9  Biggs' warning that the Board's "continued reliance . . . [on] the

10  offense and on conduct prior to imprisonment . . . could result in a due

11  process violation" in the future, the Sass court determined that the

12  gravity of the offenses of which the prisoner was convicted (second

13  degree murder, gross vehicular manslaughter, hit and run death, causing

14  injury while driving under the influence, and felony drunk driving),

15  combined with his prior offenses, constituted the requisite "some

16  evidence" to support the Board's decision to deny parole.  Id. (emphasis

17  in original).  As such, the Sass court concluded that the state courts'

18  decisions upholding the Board's findings comported with federal law.

19  Id.

20      The Ninth Circuit most recently evaluated a habeas petitioner's

21  challenge of the Board's decision denying parole in Irons.  See Irons,

22  479 F.3d at 663-65.  Like Petitioner, Irons had no prior criminal record

23  when he was convicted of second-degree murder in the death of his former

24  housemate.[6]    Id. at 660.  Also like Petitioner, Irons was deemed

25  _____

26      [6]  The facts of the commitment offense in Irons are, at least in some respects,
similar to the facts of this case.  See Irons, 479 F.3d at 660.  For instance, Irons

27  suspected his housemate was stealing from him, and became angry when the other man
denied responsibility for the thefts.  Id.  During their heated argument, Irons went

28  to his room, retrieved a gun, fired twelve rounds into his housemate, and stabbed him

unsuitable for parole despite having an exemplary prison record, positive psychological reports, completed numerous vocational and self-help courses, solid plans for the future, and the support of the trial prosecutor. Id. at 660-61. The particular parole denial at issue in Irons was based on, among other things, the Board's finding that the commitment offense was "carried out in an especially cruel and callous manner" and was prompted by a trivial motive in relation to the offense. Id. at 661. On habeas review, Irons argued that the Board's reliance on this unchanging factor violated his due process rights. Id. at 664. After a review of its reasoning in Biggs and Sass, the court explained that Sass precluded it from accepting Irons' due process argument. Id. In particular, the court compared the facts of the crimes committed by Sass and Irons, underlined that the murder in Sass "was less callous and cruel than the one committed by Irons," and concluded that because Sass was found to have been properly denied parole on the basis of his commitment offense (coupled with his prior convictions), it could not hold that Irons, who was denied parole on similar grounds, was somehow deprived of due process. Id. The facts of Petitioner's murders are similar to those presented in Sass and Irons and therefore also support the Governor's determination that parole was inappropriate at that time.

As in Biggs, Sass and Irons, the petitioner in the instant case argues that even if there was sufficient evidence to support the parole reversal, the Governor erred by repeatedly denying him parole based upon the unchanging characteristics of his commitment offenses. Petition at

in the back twice. Id. Irons then wrapped the body in a sleeping bag, procured a car, and ten days later, disposed of the body in the ocean. Id. Irons later confessed to the killing and was ultimately sentenced to a prison term of seventeen years-to-life. Id.

25-27; Pet. Amend. Supp. Brief at 6-21; Pet. Resp. at 2-7.  However, the reality is that the parole denial at issue in this case was only Petitioner's *second* parole review, and at the time of the parole hearing, Petitioner only had served approximately twelve years of the minimum eighteen year sentence he received.[7]  As noted above, the Ninth Circuit has opined that repeated parole denials based upon immutable facts *may* violate due process at some point in time, but it has not found a due process violation where the prisoner has served less than the minimum sentence imposed.  See, e.g., Biggs, 334 F.3d at 912 (Biggs had served fifteen years of a twenty-five years-to-life sentence at the time of the challenged parole review); Sass, 461 F.3d at 1125 (Sass had served eleven and twelve years of a fifteen years-to-life sentence); Irons, 479 F.3d at 660 (Irons had served sixteen years of a seventeen years-to-life sentence).  Moreover, while theIrons court cautioned that due process might be violated if prisoners are deemed unsuitable for parole based solely on their commitment offense or other immutable factors *after* the expiration of their minimum terms, see Irons, 479 F.3d at 665, this concern is not present in the instant case.

   In summary, this Court has conducted an independent review of the record and has determined that the Governor's finding that Petitioner was unsuitable for parole is "not so devoid of evidence that the findings of the [Board] were without support or [were] otherwise

---

   [7]    In his supplemental pleadings, Petitioner argues that this Court should consider subsequent parole reviews and the fact that Petitioner now has served more than the minimum custodial term to which he was sentenced.  Pet. Amend. Supp. Brief at 19-21; Pet. Resp. at 2.  However, those hearings and decisions are not properly before this Court; this Court only may consider the evidence presented to and considered by the Board and the Governor during the 2002 and 2003 review process.  See Biggs, 334 F.3d at 913 n.1; Irons, 479 F.3d at 661 n.1.

arbitrary." <u>Hill</u>, 472 U.S. at 457.   In particular, this Court finds that the record contains the requisite "some evidence" supporting the Governor's findings that there were multiple victims, that the offenses were committed with an exceptionally callous disregard for human suffering, and that the motive for the crimes was very trivial in relation to the offense. <u>See</u> Cal. Code Regs. tit. 15, § 2402(c)(1)(A) (that multiple victims were attacked), § 2402(c)(1)(D) (that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering), § 2402(c)(1)(E) (that the motive for the crime was very trivial in relation to the offense).   The Court also highlights that the challenged hearing was only Petitioner's second parole hearing and Petitioner had not yet served his minimum sentence. AS such, there was enhanced legal support for the Governor's reliance on these factors.   <u>Irons</u>, 479 F.3d at 665.   Finally, while the Board reached a different decision after weighing these same factors, this Court cannot say that there is no evidentiary support for the Governor's decision, especially given the relevant case law.

### (ii) <u>Significant Stress</u>

Turning to the second factor cited by the Governor to justify his decision to deny parole, the parties agree that one factor indicating suitability for parole is whether the "prisoner committed the crime as the result of significant stress in his life, especially if the stress has built over a long period of time." Cal. Code Regs. tit. 15, § 2402(d)(4). Petitioner argues that the facts of the case support the Board's determination that he committed the crime as the result of significant stress.   Petition at 15-16.   Specifically, Petitioner emphasizes that the victim was older than he, that the two had a violent relationship, that the victim had threatened to kill Petitioner and his

family, and that the victim had burglarized Petitioner's home in the week preceding the crime. Id.  While these facts support the Board's conclusion, they do not negate the Governor's conclusion.  The Governor found that the crimes were not committed as the *result* of significant stress because the victim did not pose an immediate threat to Petitioner or his family.  Indeed, the Governor determined that Petitioner had time to call the police or take other action after the burglary but chose instead to engage in vigilante justice.  See Exh. H at 172.

An independent review of the record reveals that there is evidentiary support for the Governor's conclusion.  First, Petitioner immediately assumed that Goodhue had committed the burglary, which made him angry, and in that mental state, took his gun to confront Goodhue at his home rather than calling the police to investigate.  Exh. F at 56-58; Exh. G at 113.  Second, despite the fact that there is no evidence that Goodhue owned or had access to a gun, Petitioner obtained a shotgun for protection several days prior to the burglary and murder.  Exh. F at 59-61.  Third, Petitioner testified that when he first arrived at Goodhue's trailer, he pounded on the door and windows, then returned to his truck, drove around the block, and then returned to the trailer, got his gun out of the truck, loaded it, and fired at the trailer.  Id. at 62.  A witness also testified that she observed the shooter sitting in his vehicle and then driving the vehicle before returning to the trailer.  Exh. F at 57-58.  These facts support the Governor's conclusion that Petitioner's crime was not committed as a result of the stress he was feeling, but rather in an attempt to obtain vigilante justice for the burglary and other injustices he believed Goodhue had committed, as well as to scare Goodhue.  Accordingly, there is the requisite "some evidence" supporting the Governor's decision that this

factor did not weigh in favor of parole suitability and that Petitioner was not suitable for parole.  See Hill, 472 U.S. at 456.

### (iii)   **Sufficient Therapy**

The third factor cited by the Governor involves Petitioner's alleged failure to participate in sufficient self-help and anger management therapy.  Cal. Code Regs. tit. 15, § 2402(d)(9).  Petitioner argues that there are no facts supporting the Governor's conclusion and further claims that the anger management course suggested by the Governor was not available at Petitioner's penal institution.  Pet. Supp. Brief at 3.  Respondent merely counters that the Governor made the finding and that therefore it was sufficient.  Resp't. Supp. Resp. at 11-12.  Respondent does not cite any evidence supporting the Governor's conclusion.

Initially, the Governor derides Petitioner for only participating in fourteen Alcoholic Anonymous ("AA") meetings over the course of twelve years in prison.  See Exh. H at 173.  However, there is no evidence in the record that alcohol played any part in the commitment crimes or that Petitioner either has or had a problem with alcohol.  In fact, Petitioner stated that he did not like alcohol, never had a problem with it, and preferred to attend religious classes rather than AA meetings because he received more benefit from the religious classes and the AA meetings tended to involve prisoners discussing the good times they experienced when drinking.  See Exh. G at 126-27; 2001 Psychological Evaluation, Exh. J at 195.  Moreover, the Governor's summary of Petitioner's therapy and self-help activities minimizes the actual efforts identified by Petitioner and evidenced in the record. See Exh. G at 128-30.  The final fact cited by the Governor is that Petitioner "has not participated in any direct anger management

therapy."  Exh. H at 173.  Petitioner states, without support, that anger management therapy is not offered at his institution.  Pet. Amend. Supp. Brief at 3.  Respondent does not dispute this statement and offers no evidence that such a course was offered to Petitioner and that he failed to take it.  This Court also could not find any evidence in the record regarding such a class or Petitioner's failure to participate in any recommended or offered self-help courses.  See Exh. J at 196-97 (psychologist finds no mental health concerns and makes no recommendations regarding additional treatment); Exh. F at 73-74 (same); Exh. G at 132 (same).  For all these reasons, this Court finds there is no evidentiary support for the Governor's conclusion that Petitioner was not suitable for parole because he had not participated in sufficient self-help therapy.

(iv)      <u>Summary</u>

This Court has conducted an independent review of the record presented to the Board in 2002 and Governor in 2003.  Based upon it's independent review, the Court finds that there is no evidence supporting the Governor's conclusion that Petitioner was not suitable for parole because he had not participated in sufficient self-help and anger management courses.  However, the Court finds that there is the requisite "some evidence" to support the Governor's determinations that Petitioner was not suitable for parole due to the nature of the commitment offenses and because the crimes were not committed as the result of significant, long-term stress.  See <u>Hill</u>, 472 U.S. at 456. Each of these conclusions individually is sufficient to satisfy the requisite "some evidence" standard for denying parole.  <u>Id.</u>   For the reasons set forth above, the Court also finds that given the particular facts of Petitioner's commitment offenses and the timing of the relevant

30

parole hearing and subsequent review, the Governor's decision does not violate due process.[8]  These findings mandate a conclusion that the state court's denial of Petitioner's habeas petition was not objectively unreasonable.  Accordingly, this Court **RECOMMENDS** that the pending federal habeas petition be **DENIED** on this basis.

### c.   Personal Review by Governor

Petitioner argues that his due process rights were violated because the Governor did not *personally* review the parole decision.   In particular, Petitioner asserts that the Board granted parole and then submitted a secret "executive summary" to the Governor providing a litany of reasons to overturn the parole grant.  Petitioner argues that because the Board and the Governor are required by state law to consider the same factors, the described and utilized procedure "makes a mockery of due process."  Petition at 11-13.  Respondent counters that there is no evidence to support Petitioner's argument.  Resp't. Supp. Brief at 9 n.4.

As set forth above, the law requires the Governor to consider the same delineated statutory factors utilized by the Board.  See Cal. Const. art. V, § 8(b); Rosenkrantz, 29 Cal. 4th at 660.  However, the law does not require the Governor to give the same weight to each of the relevant facts; rather, the Board and the Governor must independently determine the appropriate importance to attach to each circumstance or

---

[8]     These findings also negate Petitioner's claims that the Governor had a "no-parole" policy which violated his constitutional due process rights.  As set forth in the body of this Report and Recommendation, the Court finds that there was the requisite some evidence supporting the Governor's decision.  So, even if there was such a policy (and this Court does NOT make such a finding), it was not the reason for the Governor's decision in this case.  Accordingly, to the extent that Claim 9 asserts an such an exhausted due process claim, this Court **RECOMMENDS** that it be **DENIED**.

1  combination of circumstances. Cal. Code Regs. tit. 15, § 2402(c) and

2  (d). Contrary to Petitioner's assertions, gubernatorial review would be

3  meaningless if the Governor was required to reach the same conclusion as

4  the Board. Moreover, the Governor's decision is signed by former

5  Governor Gray Davis, <u>see</u> Exh. H at 173, and there is no evidence to

6  support Petitioner's accusation that Governor Davis did not personally

7  review the decision. The statute does not require Governor Davis to

8  personally draft his decisions; the fact that he personally signed the

9  decision establishes that he personally reviewed the decision. Absent

10 evidence to the contrary, which Petitioner has not supplied,

11 Petitioner's allegations are without merit and this Court **RECOMMENDS**

12 that Petitioner's petition be **DENIED** on this basis.

13                          <u>**CONCLUSION AND RECOMMENDATION**</u>

14      In sum, after conducting an independent review of the record, this

15 Court finds that Petitioner has failed to present evidence suggesting

16 that any state court's decision was contrary to, or an unreasonable

17 application of, clearly established federal law. <u>See</u> 28 U.S.C.

18 § 2254(d). As such, this Court **RECOMMENDS** that Petitioner's Petition

19 for Writ of Habeas Corpus be **DENIED** and the case dismissed with

20 prejudice.

21      For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the

22 District Court issue an Order: (1) approving and adopting this Report

23 and Recommendation, and (2) directing that Judgment be entered denying

24 the Petition.

25      **IT IS HEREBY ORDERED** that any written objections to this Report

26 must be filed with the Court and served on all parties **no later than <u>May</u>**

27 **<u>11, 2007</u>.** The document should be captioned "Objections to Report and

28 Recommendation."

1      **IT IS FURTHER ORDERED** that any reply to the objections shall be

2   filed with the Court and served on all parties **no later than <u>June 1,</u>**

3   **<u>2007</u>.**   The parties are advised that failure to file objections within

4   the specified time may waive the right to raise those objections on

5   appeal of the Court's order.   <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455

6   (9th Cir. 1998).

7

8   DATED:   April 20, 2007

9

10                                      BARBARA L. MAJOR
                                       United States Magistrate Judge
11

12
    COPY TO:
13
    HONORABLE IRMA E. GONZALEZ
14  U.S. DISTRICT JUDGE

15  ALL COUNSEL

16

17

18

19

20

21

22

23

24

25

26

27

28