# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE M. STABEN,<br><br>　　　　　　　　　　　　Petitioner,<br>　vs.<br>ROBERT J. HERNANDEZ, Warden,<br><br>　　　　　　　　　　　　Respondent. | CASE NO. 06cv1407-IEG(BLM)<br><br>Order Rejecting Objections; Adopting Report and Recommendation; Denying Petition for a Writ of Habeas Corpus |

　　　　Petitioner Lee M. Staben ("Staben"), a state prisoner proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging former Governor Gray Davis' May 19, 2003 decision finding he was unsuitable for parole.[1] On April 20, 2007, Magistrate Judge Barbara L. Major filed a Report and Recommendation ("R&R") recommending the Court deny the petition. Both Petitioner and Respondent have filed objections to the R&R. Respondent has filed a reply.

　　　　The petition presents serious issues concerning the point at which the denial of parole by state agents violates due process. However, this Court's review is limited by the scope of relief available under 28 U.S.C. § 2254. Upon *de novo* review, for the reasons set forth herein, the Court

---

[1] The Board of Prisoner Terms subsequently found Petitioner unsuitable parole in August 2005. Staben is appealing the subsequent decision in the California courts and that decision is not before the Court at this time. On July 23, 2007, Staben filed a notice of a newly issued tentative favorable decision by the California Court of Appeal, Fourth Appellate District, Division Two relating to the Board's August 8, 2005 unsuitability finding.

rejects both Petitioner and Respondent's objections and adopts the R&R. The petition is DENIED.

## *Background*

On June 14, 1991, Staben was convicted of two counts of second degree murder with the special allegation of personal use of a firearm for the death of Danwya Boyd and her eight month old fetus. [Respondent's Exhibit B.] On October 2, 1991, Staben was sentenced to a total term of 18 years to life. [Id.] His minimum eligible parole date was July 16, 2002. [Respondent's Exhibit G, at 109.]

Following his first parole hearing on December 27, 2001, the Board of Prison Terms ("Board") found Staben unsuitable for parole. [Respondent's Exhibit F.] On December 20, 2002, following a second hearing, the Board found Staben suitable for parole. [Respondent's Exhibit G.] The Board, in making its admittedly unusual decision, cited Petitioner's complete lack of criminal history, his stable social history, the fact that he graduated from high school and continued his education while in prison, his involvement in religious and self-help activities while in prison, his lack of infractions while in prison, his realistic parole plans, his great family support, and his considerable remorse. [Id. at 149-51.]

On May 19, 2003, Governor Davis reversed the Board's finding. [Respondent's Exhibit H.] The Governor determined the Board gave inadequate consideration to the gravity of the crime, the fact Staben had several clear opportunities to cease his criminal activity but instead chose to continue, the fact Staben was not under significant stress at the time he committed the crime, that the facts of the case fully supported the second degree murder conviction, and the fact Staben had not fully participated in self-help programming and anger management. [Id.]

Staben filed a petition for a writ of habeas corpus in the Riverside County Superior Court, which was denied without comment. [Respondent's Exhibit L and M.] Staben filed an identical petition with the California Court of Appeal, which was summarily denied. [Respondent's Exhibits N and O.] Staben then filed a petition for a writ of habeas corpus with the California Supreme Court, which was also summarily denied. [Respondent's Exhibits P and Q.]

Staben initially filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Central District of California on April 6, 2004. On May 30,

2006, after the case was fully briefed, the Court transferred the case to this Court. Following the submission of supplemental briefing, on April 20, 2007, Magistrate Judge Major filed the R&R recommending denial of the petition. Both parties have filed objections.

### *Discussion*

Magistrate Judge Major has set forth the appropriate standard of review with regard to Staben's petition. [R&R, pp. 5-7.] The Court reviews *de novo* those portions of the R&R to which the parties have objected. Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002) (citing 28 U.S.C. § 636(b)(1)(C)).

*A. Respondent's Objections*

Respondent raises three objections to the R&R: (1) the R&R erroneously found it is clearly established federal law that California inmates possess a federal liberty interest in parole; (2) the R&R erroneously found it is clearly established federal law that the "some evidence" standard of review applies in the parole context; and (3) the R&R erroneously found the "some evidence" standard was not met with regard to the Governor's determination the Petitioner failed to participate in sufficient self-help and anger management therapy.

The Ninth Circuit has squarely rejected both of Respondent's first two arguments. The Supreme Court in Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987) held that "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (citing Greenholtz and Allen). In McQuillion, the Ninth Circuit examined the language of California Penal Code § 3041(b) regarding when parole should be granted. Upon comparison of the language to the statutes at issue in Greenholtz and Allen, the Ninth Circuit stated that "[u]nder the 'clearly established' framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion, 306 F.3d at 902; see also Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003) ("Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due

1  Process Clause.")

2  In his objections, Respondent argues California Penal Code § 3041 does not contain
3  mandatory release date language. Notwithstanding the Ninth Circuit's decisions in McQuillion
4  and Biggs, Respondent urges the Court to find, based upon the California Supreme Court's
5  decision in In re Dannenberg, 34 Cal. 4th 1061 (2005), that California prisoners have no liberty
6  interest in parole release. However, the Ninth Circuit in Sass v. California Board of Prison Terms,
7  461 F.3d 1123, 1127-28 (9th Cir. 2006), rejected the argument that the Dannenberg decision
8  changed the scope of California prisoners' liberty interest in parole. Under clearly established
9  federal law, California prisoners have a protected liberty interest in parole under California Penal
10 Code § 3041.

11 The Ninth Circuit has also held it is clearly established federal law that the "some
12 evidence" standard applies to parole determinations. The Supreme Court in Superintendent v.
13 Hill, 472 U.S. 445, 454 (1985) held that "revocation of good time does not comport with 'the
14 minimum requirements of procedural due process,' unless the findings of the prison disciplinary
15 board are supported by some evidence in the record." In Sass, the Ninth Circuit explained that
16 although Hill involved the accumulation of good time credits, rather than denial of parole, the
17 same "some evidence" standard applied to parole because "'both directly affect the duration of the
18 prison term.'" 461 F.3d at 1128 (quoting Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390
19 (9th Cir. 1987)). The Ninth Circuit further explained the "some evidence standard is minimal, and
20 assures that 'the record is not so devoid of evidence that the findings of the disciplinary board
21 were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457). "To
22 hold that less than the some evidence standard is required would violate clearly established federal
23 law because it would mean that a state could interfere with a liberty interest – that in parole –
24 without support or in an otherwise arbitrary manner." Id.; see also Irons v. Carey, ___ F.3d ___,
25 2007 WL 2027359, at *3 (9th Cir. July 13, 2007). Magistrate Judge Major correctly determined
26 that under clearly established federal law Staben has a protected liberty interest in parole and that
27 the "some evidence" standard applies in reviewing the Governor's decision to deny parole.

28 The Court also rejects Respondent's final objection regarding the Governor's finding that

1  Staben failed to participate in sufficient self-help and anger management. As set forth in the R&R,
2  in a California parole proceeding, "[t]he Board must determine whether a prisoner is presently too
3  dangerous to be deemed suitable for parole based on the 'circumstances tending to show
4  unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code Regs.,
5  tit. 15 § 2402(c) - (d)." Irons, 2007 WL 2027359 at *4. The Governor considers the same factors
6  in reviewing the Board's finding of suitability. In re Rosekrantz, 29 Cal. 4th 616, 660 (2002). "To
7  determine whether the some evidence standard is met 'does not require examination of the entire
8  record, independent assessment of the credibility of witnesses, or weighing of the evidence.
9  Instead, the relevant question is whether there is any evidence in the record that could support the
10 conclusion reached by the ... [B]oard.'" Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-56).
11 However, "the evidence underlying the [B]oard's decision must have some indicia of reliability."
12 Biggs, 344 F.3d at 915.
13     Pursuant to Cal. Code Regs., tit. 15 § 2402(d)(9), one factor which may tend to show
14 suitability for parole is participation in institutional activities which may enhance a prisoner's
15 ability to function lawfully upon release. The Board in its finding of suitability noted Staben had
16 "a considerable amount of self-help programming, Life Plan for Recovery, Hands of Peace" and
17 that Staben had "numerous certificates of what you've been involved in and programs that have
18 become available to you." [Respondent's Exhibit G, at 150.] Nonetheless, the Governor found
19 "Mr. Staben has only participated in approximately 14 Alcoholics Anonymous meetings during his
20 12 years in prison. His other program participation amounts to a three and one-half day religious
21 meeting, 120 hours of substance abuse counseling, and 22 hours with the Hands of Peace
22 organization." [Respondent's Exhibit H, at 173.] The Governor further found "Mr. Staben lacks
23 sufficient self-help and anger management therapy. His inability to control his anger lead [sic] to
24 the tragic deaths of Ms. Boyd and her child, yet Mr. Staben has not participated in any direct anger
25 management therapy." [Id.]
26     Magistrate Judge Major determined the Governor's finding with regard to Staben's failure
27 to participate in sufficient self-help and anger management was not supported by "some evidence."
28 Magistrate Judge Major noted that although the Governor derided Staben for participating in only

1  14 Alcoholics Anonymous meetings, there is no evidence that alcohol played any part in the
2  commitment offense or that Staben has ever had a problem with alcohol.  [R&R, p. 29.]
3  Magistrate Judge Major noted that Staben preferred to attend religious classes, rather than AA
4  meetings, because he received more benefit from the religious classes and the AA meetings tended
5  to involve prisoners discussing the good times they experienced when drinking.  [Id. (citing
6  Respondent's Exhibit G, at 126-27 and Exhibit J, at 195).]  Magistrate Judge Major also noted that
7  no anger management therapy was offered at the institution and there is no place in the record
8  where institutional officials recommended that Staben participate in anger management classes.
9       Respondent objects to Magistrate Judge Major's R&R, arguing the Governor's finding that
10  Staben is unsuitable for parole based upon his failure to participate in anger management and self-
11  help therapy is supported by some evidence.  Respondent argues the facts stated by the Governor
12  themselves are sufficient to satisfy the "some evidence" standard.  Respondent cites the
13  Governor's letter stating that Staben only went to AA sporadically, did not participate in any self-
14  help between October 1991 and March 1996, only participated in a 140-hour Life Recovery
15  program and two other self-help programs from 1996 to 1997, and then did not participate in any
16  other self-help until 2002.
17       In determining whether the particular circumstances support or weigh against a finding that
18  a prisoner is suitable for parole, the ultimate question is whether "the prisoner will pose an
19  unreasonable risk of danger to society if released from prison."  Cal. Code Regs., tit. 15 § 2402(a);
20  In re Barker, 151 Cal. App. 4th 346, 366 (2007).  The California Court of Appeal has commented
21  on more than one occasion about the suspect nature of the boilerplate finding by the Board of the
22  need for a prisoner to undergo additional therapy before he can be found suitable for parole.
23  Barker, 151 Cal. App. 4th at 367-38 (citing In re Ramirez, 94 Cal. App. 4th 549, 571 (2001),
24  disapproved of on other grounds in Dannenberg, 34 Cal. 4th 161 (2005) and In re Scott, 119
25  Cal.App.4th 871, 896-97 (2004)) (some evidence standard not met by Board's finding that
26  prisoner was unsuitable for parole based upon failure to participate in therapy to cope with stress
27  where none of the psychological reports in record mention any need for therapy).  None of the
28  experts who submitted reports as part of the parole proceedings opined that Staben was in need of

1  any additional self-help or anger management therapy. The Governor's finding is unsupported by
2  "some evidence" and is directly contrary to the record. Therefore, the Court rejects Respondent's
3  objection.

4  *B. Petitioner's Objections*

5        Staben objects that Magistrate Judge Major unreasonably relied upon the Governor's
6  statement of facts contrary to the facts contained in the record, misapplied the "some evidence"
7  standard, and misapplied the Ninth Circuit's holding in Irons, 2007 WL 2027359. Staben
8  challenges the R&R's findings that the Governor's decision was based upon "some evidence" as to
9  his mental state, intent, and stress at the time of the offense.

10       Pursuant to California Penal Code § 3041(a), "[o]ne year prior to the inmate's minimum
11 eligible parole release date a panel of two or more commissioners or deputy commissioners shall
12 ... meet with the inmate and shall normally set a parole release date as provided in Section
13 3041.5." "The panel or the board ... shall set a release date unless it determines that the gravity of
14 the current convicted offense or offenses, or the timing and gravity of current or past convicted
15 offense or offenses, is such that consideration of the public safety requires a more lengthy period
16 of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this
17 meeting." Cal. Penal Code § 3041(b). "[A] life prisoner shall be found unsuitable for and denied
18 parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to
19 society if released from prison." Cal. Code Regs., tit. 15 § 2402(a). One of the circumstances
20 tending to show unsuitability for parole is that "the prisoner committed the offense in an especially
21 heinous, atrocious or cruel manner." Cal. Code Regs., tit. 15 § 2402(c)(1). The commitment
22 offense can form the basis of a finding of unsuitability where there were multiple victims, where
23 the offense "was carried out in a manner which demonstrates an exceptionally callous disregard
24 for human suffering", or where "[t]he motive for the crime is inexplicable or very trivial in relation
25 to the offense." Id. § 2402(c)(1)(A), (D) and (E). In determining whether the commitment offense
26 is a factor demonstrating a prisoner's unsuitability for parole, the panel must determine whether
27 such offense constitutes a circumstance "tending to show that a prisoner is presently too dangerous
28 to be found suitable for parole." Irons, 2007 WL 2027359, at *4 (citing Dannenberg, 34 Cal. 4th at

1071).

In finding Staben unsuitable for parole, the Governor relied upon the following factual recitation of the underlying crime:

> Lee Staben, age 19, and his girlfriend Nicole Black and their infant son shared a house with Wayne Goodhue and his girlfriend, Dawnya Boyd, age 23.
>
> On July 12, 1990, Mr. Staben argued with Mr. Goodhue over Mr. Goodhue's failure to pay rent. During the argument, Mr. Goodhue threatened Mr. Staben with an axe handle. Following the altercation, Mr. Goodhue and Ms. Boyd moved to a trailer. Mr. Staben borrowed a 12-gauge shotgun for protection and changed the locks.
>
> On July 15, 1990, Mr. Staben and Ms. Black arrived home after a weekend away to discover their home had been burglarized and their television stolen. Mr. Staben, suspecting Mr. Goodhue and Ms. Boyd were responsible, grabbed the shotgun and drove to their trailer.
>
> He parked, left the headlights on and proceeded to scream obscenities at the trailer. A witness did not hear any response from within the trailer, but stated that Mr. Staben's remarks indicated that he was receiving a response from within. After his tirade, Mr. Staben went back to his truck and got the shotgun. He fired one shot into the trailer from approximately 20 feet away. Then he left the scene.
>
> Mr. Goodhue, struck by three shotgun pellets, suffered only minor wounds. Ms. Boyd, eight months pregnant, was struck in the back. She sustained thirteen separate injuries. Bleeding profusely, she was taken to the hospital. Despite an emergency cesarean, her fetus was stillborn. Ms. Boyd died five minutes later.
>
> Upon his return home, Mr. Staben told witnesses that he had shot at the trailer but no one was home. Witnesses stated that he frantically searched the house for a place to conceal the shotgun, eventually hiding it in an attic crawl space. Shortly thereafter, police arrived and arrested him.

[Respondent's Exhibit H, at 171-72.] Based thereon, the Governor made the following findings supporting his determination Staben was unsuitable for parole:

> I believe the Board of Prison Terms gave inadequate consideration to the gravity of the crime. The facts of this case show extreme indifference to the value of human life and disregard for human suffering. Mr. Staben armed himself with a shotgun, grabbed shotgun shells, loaded the gun en route and he fired into an occupied home at night. Indeed, the likelihood that someone was inside the trailer was substantial given it was nighttime. As such, I believe that the gravity of this offense alone is an individual negative factor, such that consideration of the public safety requires a more lengthy period of incarceration.
>
> Mr. Staben had several clear opportunities to cease, but instead chose to continue which is another negative factor I find individually weighs against parole. He testified that he sat in the truck and drove around the neighborhood on more than one instance before returning, approaching the trailer and firing. At any one of those points, Mr. Staben could have returned home. He made the choice to fire into a home.

> In finding Mr. Staben suitable for parole, the hearing panel determined that he committed the crime as a result of significant stress. I disagree. Mr. Goodhue did not pose an immediate threat to Mr. Staben or his family. Yet Mr. Staben went to confront Mr. Goodhue, armed. Rather than call police to investigate the burglary, he decided to engage in vigilante justice. The theft of his television and his residual anger from the previous altercation are trivial in comparison with the loss of two lives which resulted from his attempt at vengeance.

[Respondent's Exhibit H, at 172.] There are two questions raised by Staben's petition and objections: (1) whether the Governor's factual findings are supported by "some evidence," and (2) whether the Governor's findings provide "some evidence" supporting the ultimate conclusion that he was unsuitable for parole.

In reviewing the Governor's decision, the question is not whether the weight of the evidence supports his factual findings, but whether there is "some evidence" to support the findings. Sass, 461 F.3d at 1128; In re Rosenkrantz, 29 Cal. 4th 616, 679 (2002). Furthermore, the Governor, in making his determination of a prisoner's suitability for parole, is not required to view the record in the light most favorable to the inmate. In re Morrall, 102 Cal. App. 4th 280, 301 (2002). Although the Governor's interpretation of the facts may be contrary to the more favorable view taken by the Board, those facts are established by some evidence in the record. [R&R, at 20-22.] Magistrate Judge Major identifies the record supporting each of the Governor's factual findings. Upon independent review of the record, the Court agrees with Magistrate Judge Major's determination the Governor's factual findings are supported by the record.

The Court also concludes the Governor's sole reliance upon the commitment offense to find Staben unsuitable for parole does not offend due process.[2] The facts underlying the commitment offense may support a determination that a prisoner is not suitable for parole. Biggs, 334 F.3d at 916; Irons, 2007 WL 2027359, at *5. The factors relied upon by the Board or the Governor in finding the prisoner unsuitable, however, must go "beyond the minimum elements of the crime for which the inmate was committed." Dannenberg, 34 Cal. App. 4th at 1071; Rosenkrantz, 29 Cal. 4th at 683. In particular, the Board or the Governor may find the gravity of

---

[2]As explained above at pp. 6-7, the Governor's reliance upon Staben's failure to participate in self-help and anger management therapy was not supported by any evidence in the record. The only other reasons offered by the Governor in finding Staben unsuitable for parole relate solely to his commitment offense.

1  the offense requires a longer period of confinement under one or more of the factors set forth in
2  Cal. Code Regs., tit. 15 § 2402(c)(1).  However, "continued reliance in the future on an
3  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs
4  contrary to the rehabilitative goals espoused by the prison system and could result in a due process
5  violation."  Biggs, 334 F.3d at 917.

6  Staben points out one error in Magistrate Judge Major's R&R which impacts the
7  determination of whether the Governor's finding in this case violated his right to due process.
8  Magistrate Judge Major states Staben had only served 12 years of his 18 year sentence and
9  therefore had not served the minimum sentence imposed.  [R&R, at 26.]  However, the Board in
10 December 2002 computed Staben's minimum eligible parole date as July 16, 2002.[3]
11 [Respondent's Exhibit H, at 50.]  Therefore, to the extent Magistrate Judge Major relied upon the
12 fact Staben had not yet served his minimum sentence to determine there was no violation of due
13 process, such reliance was erroneous.

14 Nonetheless, upon *de novo* review, the Court finds the Governor's finding Staben was not
15 suitable for parole based upon the commitment offense does not offend due process.  The
16 Governor found the "facts of this case show extreme indifference to the value of human life and
17 disregard for human suffering" based upon the fact Staben armed himself and then "fired into an
18 occupied home at night."  [Id., at 172.]  Staben's acts resulted in the loss of two lives and the
19 motive for his acts was trivial.  [Id.]  Based thereon, the Governor found "the gravity of this
20 offense alone is an individual negative factor, such that consideration of the public safety requires
21 a more lengthy period of incarceration."

22 Staben argues the underlying crime in this case was not any more heinous, atrocious or
23 cruel than any other second degree murder and does not in any way indicate he is unsuitable for
24 parole.  Staben relies upon numerous district court and state appellate court cases finding the
25 continued reliance upon the facts of the offense to deny suitability violates due process. The Court
26 reviews the Governor's finding of unsuitability in this case with greater suspicion because Staben

---

28  [3]The Minimum Eligible Parole Date is calculated by subtracting all preprison credit and possible good time credit from, and adding any at-large-time to the period of confinement. Cal. Code Regs., tit. 15 § 2000(b)(66).

1  had served his minimum term for his commitment offense and had an exemplary record in prison.
2  In addition, the Governor's findings were, in many respects, contrary to the positive factors cited
3  by the Board in support of its original December 2002 decision that Staben was suitable for parole.
4  [Respondent's Exhibit G, at 149-51.]  The Governor, however, was not required to accept the
5  Board's findings. In re Morrall, 102 Cal. App. 4th at 298 (Governor has the authority to exercise
6  his independent judgment with respect to th parole of convicted murderers). The State of
7  California vests in the Governor "great" and "almost unlimited" discretion.  Id. (citing In re
8  Powell, 45 Cal. 3d 894, 902 (1988).

9     A review of the cases cited by Staben in his objections and his July 23, 2007 supplemental
10 filing demonstrates this is not the type of case in which the Governor's decision violates due
11 process.  The facts of each of the cases cited by Staben, where a federal district court or California
12 appellate court held the Governor or Board's finding of unsuitability violated due process, are
13 much more compelling than in this case. For example, in Willis v. Kane, 485 F. Supp. 2d 1126
14 (N.D. Cal. 2007), the petitioner had served 18 years on a 15-year-to-life sentence and had been
15 denied parole a seventh time based solely upon the commitment offense.  Likewise, in Martin v.
16 Marshall, 431 F. Supp. 2d 1038 (N.D. Cal. 2006), the petitioner had served more than six years
17 following his minimum eligible parole date and had been found unsuitable for parole in a fifth
18 hearing based solely upon his commitment offense. In Blankenhsip v. Kane, ___ F.3d ___, 2007
19 WL 1113798 (N.D. Cal. 2007), the petitioner had served 20 years on a 15-year-to-life sentence
20 and had been found unsuitable following his eleventh parole hearing.  In Thomas v. Brown, ___ F.
21 Supp. 2d ___, 2006 WL 3783555 (N.D. Cal. 2006), petitioner was 20 years into a 17-year-to-life
22 sentence and had been found unsuitable at a tenth hearing.  In Rosenkrantz v. Marshall, 444 F.
23 Supp. 2d 1063, 1086 (C.D. Cal. 2006), petitioner had served 24 years of a 17-year-to-life sentence
24 and had been found unsuitable following a seventh hearing.  In In re Lawrence, 150 Cal. App. 4th
25 1511 (2007), defendant was found unsuitable for parole based upon his commitment offense after
26 serving 22 years on a 7-years-to-life sentence and following a twelfth hearing.  In In re Barker,
27 151 Cal. App. 4th 346 (2007), defendant was 23 years past his minimum eligible parole date and
28 had been found unsuitable for parole following and eleventh hearing.  In In re Elkins, 144 Cal.

1  App. 4th 475 (2006), defendant was 12 years past his minimum eligible parole date and had been
2  found unsuitable for parole following his eleventh hearing.  In <u>In re Lee</u>, the defendant, an 82-
3  year-old disabled man, was found unsuitable for parole after serving 19 years on a 17-year-to-life
4  sentence.

5  Staben is correct in his assertion that the underlying murder in this case was not overly
6  heinous.  In <u>In re Lee</u>, the California Court of Appeal summarized the facts of eight other
7  California cases before deciding the facts of Lee's murder were not particularly callous.  143 Cal.
8  App. 4th at 1410-1412. The murder in this case, which resulted from Staben shooting into a trailer
9  which he may or may not have believed was occupied, was not particularly atrocious when
10 compared to these other California cases.  It was within the discretion of the Governor, however,
11 to determine the nature of the offense was such that Staben remained a danger to society just
12 shortly after he had served his minimum term.

13 The California courts and Ninth Circuit have stressed that over time the commitment
14 offense becomes less relevant to the determination of whether the prisoner remains too dangerous
15 to be found suitable for parole.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 2007 WL 2027359 at *6;
16 <u>Rosenkrantz</u>, 29 Cal. 4th at 683.  However, examining the facts of this case, the Court cannot say
17 the Governor's decision finding Staben unsuitable for parole in May of 2003, based upon the
18 nature of the commitment offense, was contrary to or an unreasonable application of clearly
19 established federal law.

## *Conclusion*

21 For the reasons set forth herein, the Court rejects Petitioner's and Respondent's objections
22 and adopts the Report and Recommendation.  The petition is DENIED.

23 **IT IS SO ORDERED**.

25 **DATED: August 2, 2007**

*[signature: Irma E. Gonzalez]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**